UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

       Plaintiff,

    v.                               File No. 1:14-CR-119

ERIC DEVIN MASTERS,

       Defendant.
_____/


Sentencing

Before

THE HONORABLE ROBERT HOLMES BELL
United States District Judge
March 18, 2015


APPEARANCES


TESSA K. HESSMILLER           JAMES K. CHAMPION
Assistant U.S. Attorney       312 E. Fulton
P.O. Box 208                Grand Rapids, MI 49503
Grand Rapids, MI 49501       Attorney for Defendant
Attorney for Plaintiff


Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter

```
 1                                    Grand Rapids, Michigan
 2                                    March 18, 2015
 3                                    9:02 a.m.
 4                         -    -    -
 5
 6                    P R O C E E D I N G S
 7
 8          THE COURT:  You may be seated.  Good morning, ladies
 9   and gentlemen.
10          MS. HESSMILLER:  Good morning, Your Honor.
11          MR. CHAMPION:  Good morning, Your Honor.
12          THE COURT:  This is the matter of United States v.
13   Eric Devin Masters.  This is our file number 14-CR-119.  Ms.
14   Hessmiller is here representing the United States Attorney's
15   Office.  Mr. Champion is here as retained counsel representing
16   Mr. Masters in this matter.
17          We were last here on September 24th of '14 when
18   pleas were tendered to Counts 3, 5, and 7 of the indictment.
19   Counts 3 and 5 charge sexual exploitation of a child under 18
20   United States Code 2251(a) and (e).  Count 7 for which a plea
21   was tendered is that of sexual exploitation of a child and
22   attempted sexual exploitation of a child, 18 United States
23   Code 2251(a) and (e) in this case.
24          A plea agreement was tendered in conjunction with
25   the plea.  The Court had a chance to review that and finds
```

1    that the charges pled to adequately reflect the seriousness of

2    the actual offense behavior in this matter.

3             The Court has had an opportunity to review the

4    rather extensive Presentence Investigation Report by Mr.

5    Hoffman.  It is some 36 pages in length.  It concludes with a

6    calculation of an adjusted offense level of 43 and a criminal

7    history level of II in this matter.

8             Have you had a chance to review the same presentence

9    report, and if so, do you have any objections, errors or

10   deletions which we should address, Ms. Hessmiller?

11            MS. HESSMILLER:  I have reviewed it, Your Honor, and

12   I have no objections, additions or deletions.

13            THE COURT:  Very well.  Mr. Champion?

14            MR. CHAMPION:  I have reviewed it along with Mr.

15   Masters, Your Honor, and we have no additions, corrections or

16   deletions.  Thank you.

17            THE COURT:  Thank you.

18            Mr. Masters, have you read this presentence report

19   in this matter?

20            DEFENDANT MASTERS:  Yes, I have, Your Honor.

21            THE COURT:  Does that represent you?

22            DEFENDANT MASTERS:  Yes, it does, Your Honor.

23            THE COURT:  Are you satisfied with counsel that is

24   representing you throughout this matter at this time?

25            DEFENDANT MASTERS:  Yes, Your Honor.

1        THE COURT:  Okay.  Are there any matters which

2   should be taken up before allocution and before victims might

3   wish to address the Court briefly, Ms. Hessmiller?

4        MS. HESSMILLER:  No, Your Honor.

5        THE COURT:  Mr. Champion?

6        MR. CHAMPION:  No, thank you, Your Honor.

7        THE COURT:  Ms. Hessmiller, you've indicated, and

8   obviously I've read the whole thing, but under the statutory

9   right of the Crime Victims' Rights Act, that victims or

10  parents of victims wish to speak.  If so, very briefly in

11  writing they may stand and read whatever it is beside you that

12  they wish to present to the Court.

13       MS. HESSMILLER:  Thank you, Your Honor.

14       THE COURT:  And they'll stand beside you, not up at

15  the podium.

16       MS. HESSMILLER:  Thank you, Your Honor.

17       Your Honor, this person here is the mother of the

18  victim in Count 3, and just for the protection of the identity

19  of the child, I'm not going to introduce her by name unless,

20  of course, Your Honor would like me to.  Also here in the

21  front row -- you can come forward -- is the mother of the

22  victim in Count 5.

23       THE COURT:  I'd like the last name of the person who

24  makes a statement here.

25       MS. HESSMILLER:  Okay.  Your Honor, this is -- the

1    first person to speak is going to be Kayla White.

2              THE COURT:  Okay.

3              MS. HESSMILLER:  And the second person to speak

4    would be Amber Masters.

5              THE COURT:  Okay.  You may read your statement.

6              MS. WHITE:  Eric, I honestly don't know where to

7    begin with you.

8              THE COURT:  You address me, not him.  Address me.

9              MS. WHITE:  From the start there was once you told

10   me that I don't know the value of a child, but look at us now.

11   I look at all those times we fought because I was protecting

12   my daughter.  It's for good reason.

13             The first time I had to hand her off to you, I

14   cried.  Remember that?  And you told me I don't -- told me not

15   to worry about her, that you'd take care of her.  This is how

16   you take care of your daughter, by molesting her every chance

17   you got over and over again?  You never stopped.  She

18   remembers everything you did, every detail.  She calls you by

19   the name of Naughty Daddy and the monster in her dream.  She

20   tells me not to make her go back to you.

21             When she told me, she'd come back so angry, and I

22   could never figure out why.  She didn't even want me to touch

23   her.  She was filled with so much anger, and I was shocked

24   because this is not how my little girl acted.  I have to tell

25   her they've locked up the key and threw it away just so she

1    understands you're gone forever.

2              She will tell me that she asked you to stop, but you

3    wouldn't; that she cried and that she yelled, but no one would

4    save her.  She will say to me, You don't know what my naughty

5    daddy did to me, Mom.  He put it in my mouth.  He bent me over

6    and stuck it in my hole.

7              You told my CPS worker that nothing was wrong with

8    your daughter.  She's fine.  Your daughter is nowhere near

9    fine, but you don't care because if you did, you would never

10   have done this to her.  As much as I hated you, I never

11   thought you were capable of this.  As much as I didn't trust

12   you, I didn't want to take my daughter away from her father.

13   This is not fair to her.

14             You finally showed your true colors.  You will never

15   see your daughter again.  You don't get to watch this

16   beautiful girl grow up.  You won't get her first dance.  You

17   won't see her graduate, play sports, or walk her down the

18   aisle.  Someday she'll have a new daddy that treats her like a

19   real daddy should because you're not a father.  You're just a

20   sick, sick man who will never get better.  You loved her for

21   selfish reasons, but now I will show her what a true family

22   is.  You will mean nothing because you are nothing.

23             You thought so little of her you had to urinate on

24   her.  Why?  Why is it so important to shame her just for sick

25   gratification?  So you could treat her like property?  Does it

1    make sense now why I had to do everything in my power to

2    protect her?

3            You're a groomer.  You do it to children.  You do it

4    to girls of all ages.  She only has one happy memory, but then

5    it all goes back to the naughty things you did to her.  She

6    tells me, I don't like my naughty daddy, but that's okay.

7    Someday I'm gonna have a new one and he's going to treat me

8    like a real daddy should.

9            I hope you rot for what you did to my daughter.  She

10   deserves so much more.  I hope you live through hell, the same

11   hell you put her through.  You deserve that and much more.

12           MS. HESSMILLER:  Your Honor, this is Amber Masters.

13           THE COURT:  Very well.  Ms. Masters, you may

14   proceed.

15           MS. MASTERS:  My daughter was an outgoing, talkative

16   girl, just a happy, go-lucky girl who had the world at her

17   fingertips.  Now that she has gone through this traumatic

18   experience, she has shut down and is very quiet.  She used to

19   be the life of the party and now has so much anxiety and

20   depression that she feels like everyone is judging her.  She

21   no longer trusts anyone except for the three or four

22   girlfriends she's had for the last four years.  She has

23   nightmares every night and can't sleep very well anymore.

24           My daughter is a bright, beautiful girl, and once

25   she is able to overcome her fears and anxiety, she will

1    realize that she still has the world at her fingertips and can

2    move forward.  Even though she has been through this traumatic

3    experience, with all the support she has, we will overcome

4    this and she will move forward to a bigger and better future.

5              THE COURT:  Thank you.

6              MS. HESSMILLER:  Your Honor, over the course of five

7    years this defendant molested five different girls.

8              THE COURT:  Are you making allocution here?

9              MS. HESSMILLER:  I am, Your Honor.  Is it not time?

10             THE COURT:  Well, no, go ahead.  Go ahead and then

11   Mr. Champion can have it.  Go ahead.

12             MS. HESSMILLER:  Over the course of five years, Your

13   Honor, this defendant has molested five different girls in

14   five different West Michigan counties.  Three of them are

15   victims in the counts of conviction here and two are victims

16   in state counts, in state counts of conviction in Ionia and

17   Muskegon counties, all of which happened in a five-year

18   period, all of which is documented in the PSR and already

19   accounted for in his criminal history.

20             This defendant molested girls in Kent County, Ionia

21   County, Muskegon County, Grand Traverse County, and Mackinac

22   County in this case.  He seems to have struck wherever there

23   was an opportunity.  There were many, many, many, many more

24   videos and photographs found on his computer in his e-mail

25   accounts that he produced during the last five years that were

1    not charged in this count because they continue to be

2    discovered on his computer.

3            From June 14th, 2011, to September 30th, 2013,

4    that's the time range that the government knows of between

5    which Masters was producing his own child pornography and

6    e-mailing it out to other people.  He himself called some of

7    these videos sleep rape where he snuck up on girls who were

8    sleeping.  He would pull their pants down.  He would touch

9    them on the pubic area.  He would fondle their breasts.  He

10   would put his penis on their lips.  He would put his penis

11   between their buttocks, and if the child flinched, he would

12   shut the camera off and start again later.

13           These are videos that he e-mailed out to other

14   people around the country, and they were actually found both

15   in Birmingham, Alabama; and in Nashville, Tennessee.  So this

16   case truly has national implications.  This happened -- some

17   of it happened while the defendant was still an active-duty

18   member of the Coast Guard stationed in St. Ignace, Michigan.

19           The government has outlined a timeline of this time

20   frame in Attachment 1 to the government's sentencing

21   memorandum, and of particular note, Your Honor, is that after

22   he was arrested on the state count of criminal sexual conduct

23   with a 17-year-old in Ionia County, he bonded out in April

24   2013.  He continued until August 2013 to molest young girls,

25   to e-mail out child pornography to other people, including

1  Counts 5 and 7, which are two of the counts of conviction in

2  this case.

3  Also while he was on bond he created a video of a

4  young girl sleeping and him rubbing his penis between her nude

5  buttocks.  Still while on bond, he engaged in a sexual

6  relationship with a child that he befriended through a fake

7  Facebook account.  That child was 13 years old, and he was

8  later convicted in Muskegon County of criminal sexual conduct

9  with that child, still while on bond for that original Ionia

10  County criminal sexual conduct.  His conduct did not stop

11  until February 2014 when he was finally taken into custody and

12  has been in continuous custody ever since.

13  Some of the other videos that the government has

14  found on his computer include hidden camera videos where he

15  set up hidden cameras of a young girl who came to visit him, a

16  family member who came to his home to visit him, and there are

17  hidden camera videos of her exiting the shower.  There are

18  videos that he took from the outside of an external window

19  into her bedroom changing.  There are videos that he took

20  under a bathroom door of her using the toilet.

21  And most horrifically, of course, Your Honor, are

22  the videos and images in Count 3 where the defendant brutally

23  sexually assaulted an 18-month-old girl in May 2012.  You've

24  just heard from the mother of that victim.  The defendant --

25  this was the defendant's first overnight unsupervised visit

1    with that child.  He took her directly to a Grand Rapids

2    hotel.  He strapped her arms and legs to the bedposts of that

3    hotel bed.

4                THE COURT:  Isn't this all in the presentence

5    report?

6                MS. HESSMILLER:  It is, Your Honor.

7                THE COURT:  Why are you reciting this?  For the

8    benefit of everybody here?

9                MS. HESSMILLER:  I'll move on, Your Honor.

10               THE COURT:  No, I just want to know why.

11               MS. HESSMILLER:  It's just so horrific, Your Honor.

12   I can't possibly think of just skipping that portion.  The

13   imagery is just horrifying.  And as the government noted in

14   our sentencing memorandum, he was e-mailing out, while he was

15   at the hotel, e-mailing these images out to other people and

16   appearing to be taking requests.

17               This defendant, Your Honor, calls for a serious,

18   serious sentence as Your Honor knows already from the facts in

19   the presentence report.  The statutory factors that are

20   generally applicable under 3553(a) are particularly applicable

21   in this case, including specifically the need to protect the

22   public from this defendant, the need for just punishment to

23   match the gravity of this defendant's crimes, and the need to

24   deter this defendant and other like-minded individuals from

25   engaging in such devastating behavior with such devastating

1    consequences to young children.

2            As proven by his own history, incarceration is the

3    only way to stop him.  It seems that at every opportunity

4    where there was a sleeping child or a young child that he

5    could take advantage of, he did.  What is disturbing is that

6    his pattern, his own pattern of history demonstrates that he

7    will not, or even more worrisome, perhaps cannot stop.

8            As outlined in the government's sentencing

9    memorandum, and the government certainly won't go through that

10   in detail here, there are Sixth Circuit cases and cases from

11   all over the country in other circuits that uphold

12   within-guideline sentences of 90 years and above, including a

13   110-year sentence for a 76-year-old defendant, multiple

14   90-year sentences, 80-year sentences in similar cases, and

15   also in cases where the defendant never had hands-on contact

16   with the victim, making this defendant's conduct arguably more

17   egregious than most of those other cases.

18           The issue of restitution, Your Honor, should I

19   address that now as well or should I do that later?

20           THE COURT:  This is your opportunity.

21           MS. HESSMILLER:  Okay.  The mother of the victim in

22   Count 3, Your Honor, is the only victim who has requested

23   restitution in this case.  She is requesting $76,640 which are

24   the costs of counseling and therapy directly caused by this

25   defendant's abuse.  This was therapy that was not occurring,

1    was not needed before the defendant abused the victim in

2    Count 3.

3           These therapy costs do fall under the mandatory

4    restitution provisions of 18 United States Code 2259.  That

5    statute requires mandatory restitution for counseling costs,

6    both present and into the future.  The victim in Count 3 is

7    only requesting these costs until the child turns five.  Based

8    on letters from the counselor and information from the mother,

9    it seems quite probable that the child will need counseling

10   beyond that time, but she's only requiring -- or requesting an

11   amount up until the child turns five, which although $76,640

12   is a lot of money, it certainly doesn't capture the extent of

13   counseling that will be needed.

14          18 U.S.C. 2259 also directs the Court not to

15   consider whether that counseling has or will be paid by

16   another source such as insurance and also cannot be reduced

17   because of the defendant's lack of ability to pay.  So the

18   government would request an order of restitution for $76,640

19   to the victim of Count 3.

20          For all of those reasons, Your Honor, the government

21   opposes a downward variance, which would be any sentence under

22   90 years, because of the seriousness and the gravity of this

23   offense and this defendant.  Thank you, Your Honor.

24          THE COURT:  Thank you.

25          Mr. Champion, you may come to the podium with your

1    client.

2              MR. CHAMPION:  Thank you, Your Honor.

3              THE COURT:  I will hear first from you and then from

4    your client.

5              MR. CHAMPION:  Thank you, Your Honor.  Good

6    morning.

7              Your Honor, we'd most respectfully request that this

8    honorable Court grant a variance in order to impose a sentence

9    sufficient, but not greater than necessary to achieve the

10   purposes of sentencing.  I do respectfully believe that a

11   variance to a sentence at the lower end of the statutory

12   provisions would be appropriate.

13             A sentence of 90 years, Your Honor, is a de facto

14   life sentence, and so would an 80-year sentence or a 70-year

15   sentence.  I believe something down around the range of 15 to

16   30 years would be appropriate and would accomplish the

17   purposes of sentencing.

18             Mr. Masters has served his country in the Coast

19   Guard.  He couldn't receive a longer sentence, Your Honor,

20   than the one the government's asking for if he had taken

21   somebody's life.  He certainly hasn't done that.  So we would

22   ask for something at the lower end of the statutory

23   provisions.  Thank you.

24             THE COURT:  Okay.  Thank you.

25             Mr. Masters, is there anything you would wish to say

1    before the Court imposes sentence?

2            DEFENDANT MASTERS:  Yes, Your Honor, thank you.

3            I know today's not an easy day for anyone.  Today is

4    a reminder of what everyone has been through.  This has been a

5    long, painful road for everyone:  the victims, their families,

6    myself, and my family.

7            THE COURT:  Wait a minute.  Who caused this?

8            DEFENDANT MASTERS:  I did, Your Honor.

9            THE COURT:  Okay.  Let's use that as the preface of

10   everything you're going to say.  You're talking about how

11   painful it is for everybody.

12           DEFENDANT MASTERS:  Right.

13           THE COURT:  Why is it painful for everybody?

14           DEFENDANT MASTERS:  It's been a long road is what

15   I'm saying.

16           THE COURT:  No, it's because of what you did.  Look

17   at me.  It's because of what you did.  Do you understand?

18           DEFENDANT MASTERS:  Yes, Your Honor.

19           THE COURT:  Do you disagree with that?

20           DEFENDANT MASTERS:  No, not at all.

21           THE COURT:  Okay.  Continue.

22           DEFENDANT MASTERS:  I do not know how to convey I'm

23   sorry when I truly believe sorry is not nearly enough for

24   exactly what you said, Your Honor, what I did.  I'm disgusted

25   in myself and what I did and --

1          THE COURT:  Well, what's your insight into this?

2  What's your insight into this?  You've had a chance to --

3  you've been in custody for about a year, right?

4          DEFENDANT MASTERS:  Yes, Your Honor.

5          THE COURT:  And you've had a lot of quiet time?

6          DEFENDANT MASTERS:  Yes, Your Honor.

7          THE COURT:  And during that quiet time, what have

8  you concluded?

9          DEFENDANT MASTERS:  The fact -- well, one, the

10  things I did were God-awful horrible.  You know, I had an

11  addiction.  That's what I'm going to call it.  I had an

12  addiction that I was, you know, feeding for awhile and it came

13  to the point to feed it more, I had to do what became worse

14  things.  I truly wish I would have stopped before, way before

15  I did any of this shit -- sorry, this stuff, Your Honor.  I

16  truly don't believe that I deserve a 90-year sentence, but --

17          THE COURT:  Well, what did you do to stop it?

18          DEFENDANT MASTERS:  I'm sorry?

19          THE COURT:  You talk about this addiction.

20          DEFENDANT MASTERS:  Yes.

21          THE COURT:  What did you do to stop the addiction?

22          DEFENDANT MASTERS:  I didn't.  I didn't stop it.

23  That's what I'm saying.  I wish I would have stopped, you

24  know, as if coming to jail before it got to the point of what

25  it did.

 1         THE COURT:  Well, you're asking other people to stop
 2  you.  Why didn't you stop yourself?
 3         DEFENDANT MASTERS:  I had an addiction, Your Honor.
 4  It was bad.  I truly believe --
 5         THE COURT:  Well, wait a minute.
 6         DEFENDANT MASTERS:  Sorry.
 7         THE COURT:  The addiction, you could not -- you
 8  could not intervene in the addiction?  The addiction just
 9  carried you and you were helpless?  Is that what you're
10  saying?
11         DEFENDANT MASTERS:  No, Your Honor.  I could have.
12         THE COURT:  These were voluntary acts undertaken by
13  you.
14         DEFENDANT MASTERS:  Yes, Your Honor.
15         THE COURT:  And they were undertaken for your
16  pleasure.
17         DEFENDANT MASTERS:  Yes, Your Honor.
18         THE COURT:  Without any thought for where the victim
19  was to end up in this matter.  Is that correct?
20         DEFENDANT MASTERS:  For the most part, yes, Your
21  Honor.
22         THE COURT:  Well, what's the difference between you
23  and Charles Manson out in California who murdered all those
24  people without thinking about what was going to happen to
25  them?  What's the difference between you and him?

 1           DEFENDANT MASTERS:  I would say for the most part

 2   nobody died in this case, Your Honor.

 3           THE COURT:  Really?

 4           DEFENDANT MASTERS:  I mean, it's still terrible

 5   crime that was committed.  I agree to that completely.  This

 6   time that you said, this quiet time that I've had to look into

 7   this has really shown me who I was and that I could have faced

 8   it.  It's just -- I should have been able to come to somebody

 9   to talk about it, to --

10           THE COURT:  Why didn't you?

11           DEFENDANT MASTERS:  Fear of what would happen,

12   which, you know, from what was already done before, it just

13   needed to happen to just get to the point to stop me.  I knew

14   it needed to stop.

15           THE COURT:  What stopped you was you were arrested.

16   You've been arrested several times for this.

17           DEFENDANT MASTERS:  Yes, Your Honor.

18           THE COURT:  When you were arrested for the first

19   time or the second time, why didn't you stop?

20           DEFENDANT MASTERS:  When I was arrested the first

21   time, Your Honor, while I was out on bond it all happened

22   between there.  After I got arrested the second time --

23           THE COURT:  Well, you don't get out on bond the

24   first time unless you're arrested, correct?

25           DEFENDANT MASTERS:  Right.

1          THE COURT:  When you were arrested for the first

2   time, why didn't bells go off?  Why didn't whistles go off?

3          DEFENDANT MASTERS:  It should have.

4          THE COURT:  Why didn't your internal compass, your

5   internal moral compass tell you something is desperately

6   wrong?

7          DEFENDANT MASTERS:  It should have.  I should have

8   sat longer where I did get arrested to show me that I was

9   wrong, Your Honor.

10          THE COURT:  Okay.  Continue.

11          DEFENDANT MASTERS:  I know that time is the debt

12   that I must pay.  Time won't heal the wounds or the damage

13   that I've caused.  I pray God will heal all these wounds.  But

14   to everyone involved, and especially the victims, I am

15   terribly sorry.  Sorry.  Thank you, Your Honor.

16          THE COURT:  Well, I don't expect you to be a

17   brilliant psychologist, but I'm stunned at how little you're

18   able to articulate about the understanding of yourself and why

19   you did what you did other than to say you're a victim of some

20   kind of a problem.  By all accounts you appear to be

21   intelligent.  You appear to be likeable by all accounts.

22          DEFENDANT MASTERS:  Yes, Your Honor.

23          THE COURT:  But it is just stunning to this Court to

24   see that you have two prior criminal convictions for criminal

25   sexual conduct.  You took elaborate steps.  Virtually every

1    step you took, you took elaborate steps to set in place a

2    setting, put in place a setting that in fact would not only

3    record it, but would be the place where you would have for

4    purposes of being able to send it out to the entire world on

5    the Internet, which is what you did, isn't it?

6              DEFENDANT MASTERS:  Yes, Your Honor.

7              THE COURT:  You wanted the whole world to see what

8    you were doing, didn't you?

9              DEFENDANT MASTERS:  No, not the whole world, Your

10   Honor.

11             THE COURT:  Well, if it goes on the Internet, what

12   do you expect?

13             DEFENDANT MASTERS:  I can't say that the people that

14   I traded with didn't send it to more people, but that was --

15             THE COURT:  Right, right.

16             DEFENDANT MASTERS:  It was a two-way connection to

17   send it and receive it.

18             THE COURT:  But you had no control -- I mean, you're

19   not stupid.  You had no control over what that person who

20   received it from you on the Internet would do with it.

21             DEFENDANT MASTERS:  You're right, absolutely.

22             THE COURT:  And likely it's been sent to Europe and

23   probably even into the Orient for persons who have this

24   so-called disease that you have so they can have enjoyment

25   from it.  Do you realize that?

1     DEFENDANT MASTERS:  Yes, Your Honor.

2          THE COURT:  So you realize the question is not

3     whether you got satisfaction out of this.  The question when

4     you sent it out on the Internet is virtually hundreds of

5     thousands of people have received these things.  Obviously

6     that's what happens.  Do you realize that?

7          DEFENDANT MASTERS:  Yes, Your Honor.

8          THE COURT:  Well, why did you do it, then?  You

9     said, well, I had an addiction.  That would explain a lot, but

10    it wouldn't explain why you sent it to all these people and

11    bragged about it, would it?

12         DEFENDANT MASTERS:  Well, the -- sorry, Your Honor.

13    The reason for sending was to receive some back, and that was

14    the pleasure that I got from it.

15         THE COURT:  Don't play me for a fool.  When you did

16    that, you also described how much fun it was and who it was,

17    didn't you?

18         DEFENDANT MASTERS:  Yes, Your Honor.

19         THE COURT:  You puffed it.

20         DEFENDANT MASTERS:  Yes, Your Honor.

21         THE COURT:  So when the mothers of these victims

22    describe the pain, they're describing the pain today.  They

23    don't know nor do any of us know how long and how far that

24    repulsive conduct is going to be transmitted to persons who

25    are unhealthy as you were and maybe still are.  Do you

1    disagree with that?

2              DEFENDANT MASTERS:  Not at all, Your Honor.

3              THE COURT:  Well, how does that make you feel?

4              DEFENDANT MASTERS:  Horrible.  Truly horrible.

5              THE COURT:  I should think it would.

6              DEFENDANT MASTERS:  Disgusted.

7              THE COURT:  I should think it would.  I should think

8    it would.  And I should think that should have been a part of

9    what you had in these quiet moments here to yourself before

10   you came in here for this sentencing.  That should have been

11   part of what you internalized and said, What am I going to do

12   with this?  How did I get myself into this?  How am I going to

13   appropriately respond to what I did?  You were raised

14   presumably in a family that held you accountable for what you

15   did, didn't you?

16             DEFENDANT MASTERS:  Yes, Your Honor.

17             THE COURT:  Well, when did you jump out of that into

18   this?

19             DEFENDANT MASTERS:  To be honest, I do not know.

20             THE COURT:  I find it -- you took a tiny infant who

21   was your daughter.  Your daughter, not some stranger, your

22   daughter, carrying presumably your name at that time.  And you

23   used her for your sexual arousement and your amusement and

24   then you traded her pictures in disgusting poses of sexual

25   penetration.  You took these and you -- as well as your niece

1   and a cousin, and you took these and you sent these out and

2   bragged about them onto the Internet.

3           I frankly can't think of a worse scenario.  I can't

4   think of a worse scenario for a father to do.  I've never had

5   one like this, and I've had a lot of bad ones in here.  I've

6   been around a long time.  I've never had a bad one like this.

7   This is way worse than anybody else, and I'm trying to figure

8   out what makes you tick.  Anyway, it seems -- and what's this

9   urination that was part of it?  What was that?  What was the

10  purpose of that?

11          DEFENDANT MASTERS:  It was a video I had seen and a

12  guy had requested that certain act.

13          THE COURT:  A guy requested you do that?

14          DEFENDANT MASTERS:  Yes.  Yes, Your Honor.

15          THE COURT:  So you did it.  Who was the guy?

16          DEFENDANT MASTERS:  Somebody I met online.  I didn't

17  know his name.

18          THE COURT:  Someone who you didn't know their name

19  requested that you urinate on a child that you had just

20  molested and you urinated on them?

21          DEFENDANT MASTERS:  In return for a video of the

22  same, yes, Your Honor, or alike.

23          THE COURT:  Oh, that was setting it up for a trade

24  that he would make to you?

25          DEFENDANT MASTERS:  Yes, Your Honor.

1          THE COURT:  Do you hear what you're saying?

2          DEFENDANT MASTERS:  It's bad.

3          THE COURT:  Bad.  Capital B-A-D.

4          DEFENDANT MASTERS:  Horrible.  Horrible.

5          THE COURT:  Well, this much the Court can conclude.

6     Its duty is to impose a sufficient sentence, not greater than

7     necessary to comply with the federal sentencing statute,

8     3553(a).  I have to look at the nature and seriousness of this

9     offense, and it's a very serious offense.  Other than

10    potentially murder, it's about as bad.  And then your history

11    and characteristics and frankly your thought process that I

12    find that went into these circumstances is certainly

13    reprehensible.

14          Is this a serious offense?  Of course it is.  A

15    thorough lack of disrespect of individuals, let alone

16    disrespect of the law.  A just punishment for this matter must

17    as well provide an adequate deterrence to this conduct

18    occurring in the future.  A benchmark of this sentence has to

19    be to protect the public from further crimes of yours.

20          I don't see any -- maybe I won't -- maybe it's

21    impossible for me to see whether there has been a moral and

22    psychological turn of character that would make this

23    impossible in the future.  I don't see that.  I think you're

24    in desperate need of correctional treatment, and it can in

25    fact be provided through the Federal Bureau of Prisons.

1            I'm giving you 200 months in the custody of the

2    Federal Bureau of Prisons as to Count 3, 200 months as to

3    Count 5, and 200 months as to Count 7 of this matter.  These

4    are three different individuals, three different

5    circumstances, coincidentally three different counties here in

6    the Western District of Michigan.  Those will be consecutively

7    served for a total of 600 months in the custody of the Federal

8    Bureau of Prisons.

9            There are a number of recommendations I'm making.

10   Obviously, sex offender treatment will be a prerequisite, and

11   then mental health assessment and counseling is going to be

12   obviously a portion of it.  I'm going to put substance abuse

13   treatment, but that's not -- and vocational training

14   opportunities and educational opportunities which are down the

15   line in this matter.

16           The federal government through the Bureau of Prisons

17   has some facilities that are designed to address the

18   population, small population of which you are a part.  Butner,

19   North Carolina, is the primary one.  It's staffed with

20   psychiatrists and psychologists and mental health

21   professionals and it is first-rate, probably the best in the

22   world for addressing the situation you present to the Court.

23   I truly hope that some insight is secured from this whole

24   matter and that you turn the corner from this.

25           You'll be placed on ten years' supervision when

1    you're released from the Bureau of Prisons.  You will register

2    with the State of Michigan as a sex offender.  You will

3    provide financial information.  You will participate in sex

4    offender assessment and/or treatment as approved by the

5    probation officer, including physiological testing, ABEL

6    assessments and other assessments.  You will reside only in a

7    residence pre-approved by the probation officer with no

8    alcohol use.

9         You will not associate or have contact with any

10   other convicted sex offenders unless in a therapeutic setting

11   and with permission of the supervised release officer.  You

12   shall not be employed in any position as a volunteer or

13   otherwise where you have contact with children under 18.  You

14   are to have no contact with any minors under 18 without the

15   written permission of the probation officer.  You will refrain

16   from entering any area where children frequently congregate,

17   including parks, schools, day care centers, theaters, and

18   playgrounds.

19        You will not purchase or possess any photographic or

20   video equipment without the prior knowledge and permission of

21   the probation officer, and that includes any Internet access

22   or activity.  You will not possess any materials depicting

23   sexually explicit conduct nor patronize any place where the

24   primary purpose is to promote such matters, nor shall you

25   utilize any 900 adult telephone numbers, and you shall advise

1      the probation officer of any materials that come into your

2      possession that falls within this category.  You shall advise

3      anyone in your household that any computer in the household

4      may be subject to computer monitoring.

5              Any fine is waived in this matter.  I see a

6      restitution amount of $76,640 has been made.  It will be

7      entered.  Interest will be waived in this matter.  A mandatory

8      special assessment of $300 will be levied as well.

9              The final order of forfeiture as to the equipment

10     you were using was entered on February 3rd.  That is confirmed

11     at this time.

12             Do you have a motion as to Counts 1, 2, 4, and 6 of

13     the indictment from the government?

14             MS. HESSMILLER:  Yes, Your Honor.  The government

15     moves to dismiss those counts.

16             THE COURT:  Any legal objection to the sentence

17     imposed not previously raised from the government?

18             MS. HESSMILLER:  No, Your Honor.

19             THE COURT:  From the defense?

20             MR. CHAMPION:  No, thank you, Your Honor.

21             THE COURT:  You have a limited right of appeal, Mr.

22     Masters, from this sentence and this conviction.  You've

23     waived some of those in the plea tendered.  You have 14 days

24     within which to file an appeal in this matter.  Your

25     obligation upon current counsel will be to assist you should

1  you wish an appeal be undertaken.  You will be remanded to the

2  custody of the federal marshal at this time.

3          Anything else that needs to be taken up or

4  explanation, Ms. Hessmiller?

5          MS. HESSMILLER:  No, Your Honor.

6          THE COURT:  Mr. Champion?

7          MR. CHAMPION:  No, thank you, Your Honor.

8          THE COURT:  Mr. Champion, thank you for your

9  representation in this matter.  Much appreciated.

10         MR. CHAMPION:  Appreciate it.

11         THE COURT:  That's all.

12             (Proceedings concluded at 9:40 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER


        I, Kevin W. Gaugier, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the proceedings had in the within-entitled and numbered cause on the date hereinbefore set forth.

        I do further certify that the foregoing transcript was prepared by me.




/s/  Kevin W. Gaugier

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter
110 Michigan N.W.
622 Federal Building
Grand Rapids, MI 49503